# THE HARMAN FIRM, PC
**Attorneys & Counselors At Law**
www.theharmanfirm.com

April 16, 2015

**VIA ECF**

The Honorable John G. Koeltl
United States District Court
Southern District of New York
500 Pearl Street
New york, NY 10007-1312

Re: *Jennifer Burgos v. 24 Seven, Inc.*
Civil Case No. 1:15-cv-01342 (JGK)

Dear Judge Koeltl:

We represent Plaintiff Jennifer Burgos, who alleges that Defendant terminated her when she became pregnant and then illegally obtained from her a release of claims. We write to address Defendant's April 2, 2015 letter requesting a pre-motion conference, for motions pursuant to Fed R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 56. The conference is scheduled for April 27, 2015, at 4:30pm, concurrently with the Initial Conference.

In support of its anticipated motion, Defendant relies solely on a purported Termination Agreement dated October 20, 2014 ("Agreement"), asserting that Plaintiff's execution of the Agreement at the time of her termination releases all claims against Defendant. As shown below, Defendant is wrong. Both the Complaint and the circumstances surrounding the execution of the Agreement support Plaintiff's position that she could not "knowingly and voluntarily" release any claims. The Agreement was obtained under duress, coercion, and as a consequence of Defendant's fraudulent inducement. Further, the Agreement lacked sufficient consideration, so as to render it voidable and/or void as a matter of law. In any event, should Defendant pursue motion practice on the Agreement, discovery on these contractual issues would be a necessary prerequisite.

**Brief Background**

Plaintiff, a single mother with young children, was employed as an administrative assistant by 24 Seven, a talent recruitment agency, for over four (4) years. She had an unblemished record, was well-liked and loved her job. On the morning of October 20, 2014, when Plaintiff returned from the hospital after learning she was pregnant, Defendant abruptly took her into a conference room and told her she was terminated.

She was given two (2) limited options, in substance: (i) to sign the agreement in exchange for which she would receive her final paycheck, unemployment insurance benefits and a check for $1,483.60; or (ii) to submit a particular doctor's note – which Defendant knew she could not obtain for a month, until November 18th. There was no conversation of a release of claims. In

shock and desperate to support her family, Plaintiff agreed to sign an agreement. She was then told to leave the office and that an agreement reflecting their conversation would be emailed to her, which it was a few hours later. She was told to return the Agreement right away. Still in shock, she signed the Agreement and returned it notarized the next day. She never intended to release any claims.

Defendant knew Plaintiff has a viable pregnancy discrimination claim and strong-armed her into sign the Agreement. Plaintiff was lead to believe that if she did not sign the Agreement, she would not receive her last paycheck and unemployment insurance benefits. These statements were bold misrepresentations and not legally accurate. It is these statements that fradulently induced Plaintiff to sign a document containing an invalid release.

**Plaintiff Did Not Release Her Pregnancy Discrimination Claims as a Matter of Law**

As Defendant concedes, a waiver of a right under Title VII is not valid unless is made "knowingly and voluntarily." *See Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 52 & n. 15 (1974). To determine whether a release was made "knowingly and voluntarily" the Court, in a totality of the circumstances analysis, must consider: (1) plaintiff's education and business experience, (2) the amount of time a plaintiff had possession of or access to the agreement before signing it, (3) plaintiff's role in deciding the terms of the agreement, (4) the clarity of the agreement, (5) whether the plaintiff was represented by or consulted with an attorney, (6) whether the consideration given in exchange for the waiver exceeds the benefits to which the employee already was entitled by contract or law; (7) whether the employer encouraged or discouraged the employee to consult with an attorney; and (8) whether the employee had a fair opportunity to consult with an attorney. *Bormann v. AT&T Communications, Inc.,* 875 F. 2d 399, 403 (2d Cir. 1989). Here, the equitable factors of *Bormann* weigh in Plaintiff's favor.

First, contrary to Defendant's presumption, Plaintiff does not have "significant business experience as a fashion designer and owner of own clothing line." Rather, she is an artist; her only education is in fashion design. She has made nominal amounts of money making dresses and has attended fashion events but has not earned income from those events. Further, she does not have any management or business training. This factor weighs in Plaintiff's favor.

Second, Plaintiff signed the Agreement in less than twenty-four (24) hours after receiving it. This factor weighs in Plaintiff's favor. *D.Grant-Hyndman v. Olivetti Mgt of Amer.,* 1997 WL 630180, at *3 (S.D.N.Y. Oct. 9, 1997) (possessing release agreement for five (5) days held insufficient).

Third, Plaintiff had no role in determining any of the Agreement's terms. Defendant does not contend otherwise. This factor weighs in Plaintiff's favor. *D.Grant-Hyndman,* at *3.

Fourth, Defendant fails to argue the matter of the "clarity" of the Agreement's terms. The Agreement is five (5) single-spaced pages, in the middle of which the General Release is buried. Further, the Agreement was not "clear" to Plaintiff that she was releasing claims for pregnancy discrimination. Rather, she believed she was signing a memorialization of the abrupt October 20, 2014 termination meeting in which Defendant never told Plaintiff that any money she

received was in exchange for a release of claims against it. Defendant does not contend otherwise. This factor weighs in Plaintiff's favor. *D.Grant-Hyndman*, at *3.

Fifth, Plaintiff did not consult with an attorney after Defendant emailed it to her and prior to signing it, for the reasons discussed herein. A few days later she was able to meet with an attorney and promptly repudiated the Agreement (by October 31, 2014 attorney letter, ten (10) days after she signed).[1] This factor weighs in Plaintiff's favor.

Sixth, factual issues exist as to whether Plaintiff received consideration for which she would not be entitled if she did not sign the Agreement. She already was entitled to the unemployment insurance benefits,[2] and her final paycheck. In the ambush termination meeting Defendant never told her that she was releasing claims against it in exchange for money. With respect to the meager $1,483.60 she was to receive after she signed the Agreement, which equals approximately two (2) weeks' salary, Defendant represented to Plaintiff that it customarily gave employees this severance when terminated without cause, as was Plaintiff. Indeed, at the meeting, Defendant told Plaintiff, in substance, that: "severance is a benefit for being one of our employees." As such, this factor weighs in Plaintiff's favor. *Gibbs v. Bank of America Corp.*, 2011 WL743224, *1 (E.D.N.Y. Feb. 3, 2011) (denying summary judgment where issue of fact whether plaintiff is already entitled to severance package he received under release agreement); *D.Grant-Hyndman*, at * 3-4 (same) (citing *Chaput v. Unisex Corp.*, 964 F.2d 1299, 1302 (2d Cir. 1992)).

Further, in the event it is determined that Plaintiff received greater value than she otherwise would have been entitled by signing the Agreement, she will return this amount to Defendant if this Court so directs.[3] *E.g., Kristoferson v. Otis Supunkmeyer, Inc.*, 965 F. Supp. 545, 548, 549 (S.D.N.Y. 1997) ("as a practical matter, a strict application of a tender-back requirement would prevent many employees from whom releases had been coercively obtained from ever challenging the validity of the releases"; requiring that consideration be paid back *if* the release is later found to be invalid on court-determined schedule and terms, "at the conclusion of the case, regardless of whether the plaintiff thereafter prevails on [its[ Title VII claim"); *Brown v. City of South Burlington, Vt.*, 393 F.3d 337 (2d Cir. 2004) ("[t]enders of consideration have been held timely even where they are made after commencement of an action and even at trial on the original claim"; citing 66 Am. Jur.2d *Release* § 46 (2001)).

---

[1] Shortly after Plaintiff signed, she was prompted by a friend to get legal advice. Plaintiff contacted this office and obtained a consultation. The day we met with her this office sent Defendant notice (October 31st) repudiating the Agreement on grounds identified in this letter. Defendant refused to comply. Under these circumstances, Plaintiff acted in a reasonable time (10 days) to repudiate the Agreement.

[2] Plaintiff erroneously believed that one's employer decides whether an employee is entitled to unemployment insurance benefits, which Defendant did not correct but rather used to its advantage.

[3] We do not believe the $1,483.60 payment to Plaintiff after her termination and signed release should determine the outcome of this case. To the extent that the $1,483.60 is an issue, to avoid the tail wagging the dog, Plaintiff would be willing to put that amount in escrow pending resolution of this lawsuit or as this Court otherwise directs.

Seventh, Defendant never encouraged Ms. Burgos to consult with an attorney prior to the execution of the Agreement. Defendant does not contend otherwise. This factor weighs in Plaintiff's favor.

Eighth, because Ms. Burgos was under financial and emotional hardship, she did not have a fair opportunity to consult with an attorney. Defendant wrongfully created and imposed this situation upon her when, *inter alia*, it threatened to withhold her final paycheck and to deny her payment of her unemployment insurance benefits, both of which she was legally entitled to. This factor weighs in Plaintiff's favor.

Accordingly, all eight (8) factors weigh in Plaintiff's favor, demonstrating that she did not "knowingly and voluntary " sign the Agreement releasing all of her claims against Defendant, including her pregnancy discrimination claims under Title VII and NYCHRL.

Several cases on which Defendant relies actually support Plaintiff's position. *E.g. Zveiter v. Brazilian Nat'l Superintendency*, 833 F. Supp. 1089, 1097 (S.D.N.Y. 1993) (denying summary judgment; questions of fact existed regarding validity of release agreement where, as here, plaintiff was a secretary, not an executive familiar with legal documents, she did not negotiate its terms, it was in her possession only a short time before signing it, and she asserted she only signed because she was told she had to do so to receive her last paycheck and, while defendants contended some severance was paid, a dispute existed as to the extent to which this exceeded the pay that she was owed); *Mandavia v. Columbia Univ.*, 912 F.Supp.2d 119 (S.D.N.Y. 2012) (denying defendant's Rule 12(b)(6) motion to dismiss where, as here, the factors favored plaintiff's showing that he did not "knowingly and voluntarily" execute a release of his discrimination claims); *Laniok v. Advisory Comm. of Brainerd Mfg. Pension Plan*, 935 F.2d 1360, 1368 (2d Cir. 1991) (reversing district court's summary judgment for employer where material issues of fact existed as to whether employee's waiver was "knowing and voluntary" as plaintiff asserted that "the issue of waiver never was raised until he was presented with the typed document"); *Bank of America v. Gillaizeau*, 766 F.2d 707 (2d Cir. 1985) (reversing district court where ambiguity of documents purporting to be release and parties' intentions to introduce extrinsic evidence and oral testimony precluded summary judgment for employer).[4]

---

[4] Other cases on which Defendant relies are either inapposite or distinguishable. *Cordoba v. Beau Deitl & Assocs.*, 2003 U.S. Dist. LEXIS 22033; 2003 WL 22927874 (S.D.N.Y. Dec. 2, 2003 (unlike here, plaintiff conceded she read and understood release agreement, she discussed it with an attorney and it was supported by the promise to tell prospective employers she resigned was additional consideration); *Laramee v. Jewish Guild for the Blind*, 72 F.Supp.2d 357 (S.D.N.Y. 1999) (unlike here, employee was represented by an attorney when she signed agreement, she had one month to review it before she signing and it was three (3) pages long in plain English); *Rivera v. Sovereign Bank*, 976 F.Supp.2d 270 (E.D.N.Y. 2013) (unlike here, plaintiff was familiar with contracts and assessing risks and benefits required before signing an agreement and had one month's notice prior to receiving it).

      We respectfully submit that any motion practice at this juncture would be premature without first allowing for discovery on the issues outlined in the parties' pre-motion letters. *E.g., Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437-38 (2d Cir. 1998) (reversing district court and remanding for further proceedings where employee asserted he was forced to sign agreement releasing employer from liability under threat of termination).

                                           Respectfully submitted,

                                           Walker G. Harman, Jr.

cc:    Michael S. Katzen, Esq. (via ecf)
        Caroline J. Berdzik, Esq. (via ecf)