**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------×

JENNIFER BURGOS,

        *Plaintiff,*

        *v.*

24 SEVEN, INC.,

        *Defendant.*

---------------------------------------------------------------------×

**15 Civ. 1342 (JGK)(FM)**

**FIRST AMENDED COMPLAINT**

Plaintiff Jennifer Burgos, by counsel, The Harman Firm, PC, alleges for her First Amended Complaint against Defendant 24 Seven, Inc., as follows:

PRELIMINARY STATEMENT

1. In this employment discrimination action, Plaintiff Jennifer Burgos ("Plaintiff" or "Ms. Burgos") seeks damages and costs against Defendant 24 Seven, Inc. ("Defendant" or "24 Seven") for pregnancy discrimination. This matter arises under Title VII of the Civil Rights Act of 1964 ("Title VII"), codified at 42 U.S.C. §§ 2000e, *et seq.*, as amended by the Pregnancy Discrimination Act of 1978 ("PDA"), and the New York City Human Rights Law ("NYCHRL"), codified at N.Y.C. ADMIN. CODE §§ 8-101, *et seq.*

JURISDICTION AND VENUE

2. Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's claims as Defendant violated Plaintiff's rights under Title VII, codified at 42 U.S.C. §§ 2000e, *et seq*.

3. Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over Plaintiff's claims brought under NYCHRL.

4. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York as a substantial part of the events giving rise to the claim occurred within this District.

5. All conditions precedent to maintaining this action have been fulfilled. A charge of discrimination was filed with the Equal Opportunity Employment Commission ("EEOC"). The EEOC issued a Notice of Right-to-Sue Letter dated January 6, 2015 relating to the discriminatory acts described in this Complaint. This action was properly initiated within ninety (90) days of the issuance of the Right-to-Sue Letter.

## TRIAL BY JURY

6. Plaintiff respectfully requests a trial before a jury.

## PARTIES

7. Plaintiff Jennifer Burgos worked for Defendant 24 Seven at all times relevant hereto, and was and is a resident of New York County, New York.

8. Upon information and belief, Defendant 24 Seven is domestic corporation with a principal place of business located at 120 Wooster Street, New York, New York, 10012.

## STATEMENT OF FACTS

9. Ms. Burgos, a single mother with young children, is an artist. Her education is in fashion design. She has made nominal amounts of money sewing dresses and has attended fashion events. She does not have any management or business training.

10. On or about August 10, 2010, Defendant, a talent recruitment agency, hired Ms. Burgos to work as an Administrative Assistant.

11. At 24 Seven, Ms. Burgos was an exemplary employee; she never received any complaints or write-ups concerning her performance, and got along well with her co-workers and superiors. She loved her job and referred her friends for any open positions at 24 Seven.

12. Defendant's attitude toward, and treatment of, Ms. Burgos changed dramatically after she became pregnant.

13. On or about October 8, 2014, Ms. Burgos felt ill and was admitted to the Emergency Room at New York Presbyterian Hospital (the "Hospital").

14. Ms. Burgos called her supervisor, Defendant's Director of Human Resources Elite Shapir, informing her that she would not be able to come to work that day.

15. At the Hospital, Ms. Burgos learned she was pregnant.

16. On or about October 9, 2014, Ms. Burgos was discharged from the Hospital. She emailed Ms. Shapir her hospital-provided documents, including a letter from the attending physician stating that she was pregnant. At this time, Ms. Burgos informed Ms. Shapir that she could return to work on or about October 13, 2014.

17. That same day, October 13, 2014, Ms. Shapir told Ms. Burgos not to return to work without a letter from her doctor clearing her to work.

18. On or about October 14, 2014, Ms. Burgos went to New York Presbyterian's Clinic Center to see a doctor in the hope of receiving the doctor's letter that Defendant requested. At New York Presbyterian's clinic, a clinic doctor saw Ms. Burgos and provided her a letter stating that she had seen a doctor. Ms. Burgos sent this letter to Ms. Shapir explaining that New York Presbyterian could not give Ms. Burgos a doctor's letter to Ms. Shapir's specifications because, according to the clinic doctor, only Ms. Burgos' gynecologist could write such a letter; her gynecologist could not see her until November 18, 2014.

19. On or about October 15, 2014, Ms. Shapir forwarded to Ms. Burgos an email from Ms. Anderson directing Ms. Burgos to send Defendant her emergency room documents for each day she was admitted in the hospital, along with a note from the emergency room physician.

20. On or about October 16, 2014, Ms. Burgos wrote Ms. Anderson an email stating that she was "more than desperate to go back to work" and was "borrowing money to pay the [Hospital's] fee" to send Defendant the medical records it demanded.

21. On or about October 17, 2014, Defendant's Operations Manager, Amber Anderson, sent Ms. Burgos an email telling her to "keep [Defendant] posted on getting documentation" and "[i]n the meantime, lets schedule a time to talk on Monday so we can talk about next steps and moving this forward. Why don't you come in on Monday at 10:30am?"

22. On or about Monday morning, October 20, 2014, Ms. Burgos returned to work. Defendant immediately told her that she needed to meet with Ms. Shapir and Ms. Anderson in a conference room (the "Meeting").

23. Whereas Ms. Burgos thought she was returning to work, Defendant ambushed her. In the Meeting, Defendant gave Ms. Burgos two (2) limited options, in substance: (i) Ms. Burgos could provide a letter from her gynecologist stating that she was able to return to work—which Ms. Shapir and Ms. Anderson knew was not possible until November 18, approximately one (1) month later—and that they would not pay her until Defendant received such a letter; or (ii) she could resign and take the offer of her final paycheck, two (2) weeks worth of pay, and the promise that 24 Seven would approve her unemployment insurance benefits.

24. Ms. Shapir and Ms. Anderson told Ms. Burgos that if she did not take either option right then there, she would be terminated immediately and Defendant would contest her unemployment insurance benefits.

25. During the Meeting, Defendant failed to provide Ms. Burgos with a written document in connection with the above-described offer.

26. During the Meeting, Defendant merely repeated, untruthfully, that if Ms. Burgos signed an agreement reflecting the offer, she would receive her final paycheck, two (2) weeks worth of pay, and her unemployment insurance benefits.

27. Defendant misrepresented to Ms. Burgos the material terms of the document Defendant later sent her to sign; Defendant never told or in any way explained to Ms. Burgos that she would be releasing claims against Defendant, nor was there any mention that she was to receive her final paycheck, two (2) weeks worth of pay, and her unemployment insurance benefits in exchange for her release and waiver of any and all claims against Defendant.

28. Ms. Burgos already was entitled to unemployment insurance benefits[1] and her final paycheck, regardless of whether she signed a document releasing any claims against Defendant.

29. Further, during the Meeting, Defendant represented to Plaintiff that it customarily gave employees two (2) weeks salary when terminated without cause, as Plaintiff was. Indeed, Defendant told Plaintiff, in substance, that, "severance is a benefit for being one of our employees."

30. Defendant led Plaintiff to believe that if she did not sign a document reflecting the terms of the offer, she would not receive her last paycheck, two (2) weeks severance and unemployment insurance benefits. These statements were bold misrepresentations and not legally accurate.

31. Defendant, upon information and belief, knew Plaintiff was under financial stress.

---

[1] Ms. Burgos erroneously believed that one's employer decides whether an employee is entitled to unemployment insurance benefits, which Defendant did not correct but rather used to its advantage.

32. In shock at being terminated or having to go a month without pay and desperate to support her family, Ms. Burgos agreed to sign an agreement when Defendant delivered it to her.

33. Defendant told Ms. Burgos to leave the office and that an agreement reflecting their conversation would be emailed to her.

34. Ms. Burgos did not have any role in determining any of the agreement's terms.

35. On or about October 21, 2014, Ms. Shapir and Ms. Anderson emailed to Ms. Burgos the subject Termination Agreement ("Agreement") for her to sign. The Agreement was five (5) single-spaced pages, in the middle of which the General Release was buried.

36. The Agreement was not clear to Ms. Burgos that she was releasing claims for pregnancy discrimination. Rather, she believed she was signing a memorialization of what she told at the Meeting in which Defendant never told her that any monies she was to receive were in exchange for a release of claims against it.

37. Upon information and belief, Ms. Burgos did not receive sufficient consideration in exchange for releasing any and all claims against Defendant.

38. Further, the Agreement fails to delineate that upon signing it Ms. Burgos would be waiving and releasing pregnancy discrimination claims against Defendant.

39. Ms. Shapir told Ms. Burgos that she needed to "hurry" and sign the Agreement or they would not be able to process her last payroll check.

40. In less than twenty-four (24) hours after receiving the Agreement and still in shock, Ms. Burgos signed the Agreement and returned it notarized the next day.

41. Defendant never encouraged Ms. Burgos to consult with an attorney prior to her execution of the Agreement.

42. As a consequence of the foregoing, at the time Ms. Burgos signed the Agreement, she did knowingly and voluntarily release claims against Defendant, including her pregnancy discrimination claims.

43. A few days later she was able to meet with an attorney and promptly repudiated the Agreement (by October 31, 2014 attorney letter, ten (10) days after she signed).[2]

44. In reality, Defendant terminated Ms. Burgos because it did not want a pregnant woman working for it. During the meeting, Ms. Shapir told Ms. Burgos, "You just came back from maternity leave four months ago and now you will be out again soon."[3]

45. Defendant wrongfully terminated Ms. Burgos' employment because she became pregnant. In doing so, Defendant engaged in practices that willfully, intentionally, and unlawfully discriminated against Plaintiff on the basis of her sex and pregnancy.

CLAIMS FOR RELIEF

**FIRST CAUSE OF ACTION**
**Violation of the Title VII for Discrimination Based on Pregnancy**

46. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 45 with the same force as though separately alleged herein.

47. Title VII prohibits an employer from discriminating against any individual with respect to the individual's terms, conditions, or privileges of employment because of such individual's sex.

---

[2] Shortly after Plaintiff signed, she was prompted by a friend to get legal advice. Plaintiff contacted attorneys of record in this litigaiton and obtained a consultation. Shortley thereafter (October 31, 2014), notice was sent to Defendant repudiating the Agreement on various grounds identified in the letter. Defendant refused to comply. Under these circumstances, Plaintiff acted in a reasonable time (10 days) to repudiate the Agreement.

[3] On or about February 11, 2014, Ms. Burgos went on maternity leave, and on or about June 2, 2014, Ms. Burgos returned to work.

48. The PDA amended Title VII to include discrimination on the basis of "pregnancy, childbirth, or related medical conditions."

49. Defendant violated Title VII by wrongfully terminating Plaintiff because of her pregnancy.

50. Defendant's conduct was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless disregard of Plaintiff's protected civil rights.

51. As a direct and proximate consequence of Defendant's willful discrimination against Plaintiff on the basis of her pregnancy, Plaintiff has suffered and continues to suffer substantial monetary damages, including, but not limited to, loss of past and future salary, and non-monetary damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

52. Plaintiff is entitled to compensatory damages, liquidated damages, costs, attorneys' fees, and any other damages and other compensation that the Court deems appropriate.

**SECOND CAUSE OF ACTION**
**Violation of the NYCHRL for Unlawful Termination Because of Pregnancy**

53. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 52 with the same force as though separately alleged herein.

54. NYCHRL § 8-107 prohibits an employer from discriminating against an employee because of her gender.

55. Defendant violated NYCHRL § 8-107 by terminating Plaintiff's employment because of her pregnancy.

56. As a direct and proximate consequence of Defendant's willful, egregious, and unlawful action, Plaintiff has suffered and continues to suffer, substantial monetary damages, including, but not limited to, loss of past and future salary, and non-monetary damages,

including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

57. Plaintiff is entitled to compensatory damages, liquidated damages, costs, attorneys' fees, and any other damages and other compensation that the Court deems appropriate.

**Request for Relief**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. for the first claim, actual damages to be determined at trial, but in no event less than $500,000;

B. for the second claim, actual damages to be determined at trial, but in no event less than $500,000;

C. an award of compensatory, assumed, and punitive damages;

D. pre-judgment and post-judgment interest;

E. attorneys' fees and costs; and

F. such other and further relief as the Court deems just and proper.

Dated: New York, New York
May 8, 2015

By: /s/ Walker G. Harman, Jr.
Walker G. Harman, Jr. [WH-8044]
THE HARMAN FIRM, P.C.
*Attorneys for Plaintiff*
1776 Broadway, Suite 2030
New York, NY 10019
(212) 425-2600
wharman@theharmanfirm.com