**GOLDBERG SEGALLA LLP**
902 Carnegie Center/Suite 100
Princeton, New Jersey 08540
(609) 986-1300
(609) 986-1301 (fax)
Attorneys for Defendant
24 Seven, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JENNIFER BURGOS,<br><br>    Plaintiff,<br><br>v.<br><br>24 SEVEN, INC.,<br><br>    Defendant. | 15 Civ. 1342 (JGK) (FM)<br><br>**ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS** |

Defendant 24 Seven, Inc. ("24 Seven"), by and through its attorneys of record, Goldberg Segalla, LLP, hereby answers the Second Amended Complaint of Plaintiff Jennifer Burgos ("Burgos") in the above captioned action ("Second Amended Complaint") as follows:

## PRELIMINARY STATEMENT

1. The allegations in paragraph 1 of the Second Amended Complaint are not allegations of fact, and therefore no response is required.

## JURISDICTION AND VENUE

2. The allegations in paragraph 2 of the Second Amended Complaint are not allegations of fact, and therefore no response is required.

3. The allegations in paragraph 3 of the Second Amended Complaint are not allegations of fact, and therefore no response is required.

4. The allegations in paragraph 4 of the Second Amended Complaint are not allegations of fact, and therefore no response is required.

5. 24 Seven admits receiving a "Notice of Right to Sue (Issued on Request)" from U.S. Equal Employment Opportunity Commission dated January 6, 2015, along with a Notice of Charge of Discrimination (EEOC Charge No. 520-2015-00883) indicating "no action is required by [24 Seven] at this time because [Burgos's] attorney has requested that the EEOC immediately issue a Notice of Right to Sue." 24 Seven further admits that this action was originally filed on February 24, 2015. 24 Seven denies the remaining allegations in paragraph 5 of the Second Amended Complaint.

## TRIAL BY JURY

6. The allegations in paragraph 6 of the Second Amended Complaint are not allegations of fact, and therefore no response is required.

## PARTIES

7. 24 Seven admits Burgos worked for 24 Seven periodically as an employee rendering services to 24 Seven's clients on a staff augmentation basis from August 30, 2010 through December 2011, and then as an internal employee of 24 Seven from December 19, 2011 through October 20, 2014. Upon information and belief, Burgos was and is a resident of New York County, New York. 24 Seven denies the remaining allegations in paragraph 7 of the Second Amended Complaint.

8. 24 Seven admits the allegations in paragraph 8 of the Second Amended Complaint.

## STATEMENT OF FACTS

9. 24 Seven is without knowledge or information sufficient to admit or deny the allegations in paragraph 9 of the Second Amended Complaint.

10. 24 Seven admits Burgos worked for 24 Seven periodically as an employee rendering services to 24 Seven's clients on a staff augmentation basis from August 30, 2010 through December 2011, and then as an internal employee of 24 Seven from December 19, 2011 through October 20, 2014. 24 Seven denies the remaining allegations in paragraph 10 of the Second Amended Complaint.

11. 24 Seven is without knowledge or information sufficient to admit or deny whether Burgos "loved her job." 24 Seven denies the remaining allegations in paragraph 11 of the Second Amended Complaint.

12. 24 Seven denies the allegations in paragraph 12 of the Second Amended Complaint.

13. 24 Seven admits that on October 8, 2014, Burgos notified Amber Anderson, 24 Seven's Operations Manager ("Ms. Anderson"), that she spent the previous night in the emergency room, was not feeling well and would not be able to make it into work that day. 24 Seven is without knowledge or information sufficient to admit or deny the remaining allegations in paragraph 13 of the Second Amended Complaint.

14. 24 Seven denies the allegations in paragraph 14 of the Second Amended Complaint.

15. 24 Seven is without knowledge or information sufficient to admit or deny the allegations in paragraph 15 of the Second Amended Complaint.

16. 24 Seven admits that Burgos notified Ms. Anderson that she had been discharged from the hospital on the night of October 9, 2014. 24 Seven denies the remaining allegations in paragraph 16 of the Second Amended Complaint.

17. 24 Seven admits that on October 13, 2014, Ms. Anderson notified Burgos via e-mail that 24 Seven would need a note from Burgos's doctor clearing her to return to work since she

been out ill so many days. 24 Seven denies the remaining allegations in paragraph 17 of the Second Amended Complaint.

18. 24 Seven admits that on October 14, 2014, 24 Seven received via fax a note allegedly from John Raushn, MD at New York Presbyterian Hospital which read "[Burgos] was seen at the Broadway Practice on 10/14/2014 and is now cleared to go back to work/school activity. Please excuse her from the dates 10/8-10/14 as she had a medical condition. Please also excuse her from doing any heavy lifting." 24 Seven is without knowledge or information sufficient to admit or deny whether Burgos went to New York Presbyterian's Clinic Center on October 14, 2014 and if so, why. 24 Seven denies the remaining allegations in paragraph 18 of the Second Amended Complaint.

19. 24 Seven admits that on October 14, 2014, Ms. Anderson e-mailed Burgos confirming that Burgos would be providing 24 Seven with her emergency room documentation from each day she was admitted or released as well as her note from her physician for October 14, 2014. 24 Seven denies the remaining allegations in paragraph 19 of the Second Amended Complaint.

20. 24 Seven admits the allegations in paragraph 20 of the Second Amended Complaint.

21. 24 Seven admits the allegations in paragraph 21 of the Second Amended Complaint.

22. 24 Seven admits that Burgos returned to work on the morning of Monday, October 20, 2014, and that upon arriving at work she met with Elite Shapir, 24 Seven's Director of Human Resources ("Ms. Shapir") and Ms. Anderson in 24 Seven's conference room. 24 Seven denies the remaining allegations in paragraph 22 of the Second Amended Complaint.

23. 24 Seven admits that Burgos was provided with two options: (1) be terminated for cause, under which circumstances 24 Seven would contest her application for unemployment benefits, or (2) resign from her employment with 24 Seven and sign a Termination Agreement, in exchange for which she would receive two (2) weeks' of severance pay and 24 Seven would agree not to contest her application for unemployment benefits. 24 Seven denies the remaining allegations in paragraph 23 of the Second Amended Complaint.

24. 24 Seven denies the allegations in paragraph 24 of the Second Amended Complaint.

25. 24 Seven admits the allegations in paragraph 25 of the Second Amended Complaint.

26. 24 Seven denies the allegations in paragraph 26 of the Second Amended Complaint.

27. 24 Seven denies the allegations in paragraph 27 of the Second Amended Complaint.

28. 24 Seven admits Burgos was entitled to her final paycheck regardless of whether she signed a document releasing any claims against 24 Seven. 24 Seven further admits that the State, and not 24 Seven, determines Burgos's eligibility for unemployment benefits.[1] 24 Seven denies the remaining allegations in paragraph 28 of the Second Amended Complaint.

29. 24 Seven denies the allegations in paragraph 29 of the Second Amended Complaint.

30. 24 Seven admits that it made clear to Burgos that she would not receive the two (2) weeks' severance if she did not sign the Termination Agreement. 24 Seven denies all remaining allegations in the paragraph 30 of the Second Amended Complaint.

31. 24 Seven denies the allegations contained in paragraph 31 of the Second Amended Complaint.

---

[1] With regard to Footnote 1 in the Second Amended Complaint, 24 Seven is without knowledge or information sufficient to admit or deny what Burgos believed, and denies all remaining allegations in the Footnote 1 of the Second Amended Complaint.

32. 24 Seven is without knowledge or information sufficient to admit or deny whether Burgos was "in shock at being terminated or having to go a month without pay and desperate to support her family." 24 Seven admits the remaining allegations in paragraph 32 of the Second Amended Complaint.

33. 24 Seven admits the allegations contained in paragraph 33 of the Second Amended Complaint.

34. 24 Seven denies the allegations contained in paragraph 34 of the Second Amended Complaint.

35. 24 Seven admits that Ms. Shapir e-mailed Burgos the Termination Agreement on October 20, 2014. 24 Seven denies that Ms. Anderson e-mailed Burgos the Termination Agreement. The remaining allegations in paragraph 35 refer to a document that speaks for itself and no response is required.

36. 24 Seven is without knowledge or information sufficient to admit or deny what Burgos believed she was signing. 24 Seven denies all remaining allegations contained in paragraph 36.

37. 24 Seven denies the allegations contained in paragraph 37 of the Second Amended Complaint.

38. 24 Seven denies the allegations contained in paragraph 38 of the Second Amended Complaint.

39. 24 Seven denies the allegations contained in paragraph 39 of the Second Amended Complaint.

40. 24 Seven is without knowledge or information sufficient to admit or deny whether Burgos was in "shock." 24 Seven admits Burgos faxed her signed Termination

Agreement to Ms. Shapir on October 21, 2014 at approximately 6:35 pm. 24 Seven denies the remaining allegations in paragraph 40 of the Second Amended Complaint.

41. 24 Seven denies the allegations in paragraph 41 of the Second Amended Complaint.

42. 24 Seven denies the allegations in paragraph 42 of the Second Amended Complaint.

43. 24 Seven admits it received a letter from Burgos's attorney dated October 31, 2014 in which Burgos's attorney attempted to revoke Burgos's acceptance of the Termination Agreement.[2] 24 Seven denies the remaining allegations in paragraph 43 of the Second Amended Complaint.

44. 24 Seven denies the allegations contained in paragraph 44 of the Second Amended Complaint.[3]

45. 24 Seven denies the allegations contained in paragraph 45 of the Second Amended Complaint.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**Violation of the Title VII for Discrimination Based on Pregnancy**

46. 24 Seven hereby repeats and realleges its responses to the foregoing paragraphs as if fully set forth herein.

47. The allegations in paragraph 47 of the Second Amended Complaint are conclusions of law, not allegations of fact, and therefore no response is required.

48. The allegations in paragraph 48 of the Second Amended Complaint are conclusions of law, not allegations of fact, and therefore no response is required.

---

[2] With regard to Footnote 2 in the Second Amended Complaint, 24 Seven admits it received a letter from Burgos's attorney dated October 31, 2014 attempting to revoke her acceptance of the Termination Agreement. 24 Seven denies that Burgos acted in a "reasonable time" to "repudiate the Agreement." 24 Seven is without knowledge or information sufficient to admit or deny the remaining allegations in Footnote 2 of the Second Amended Complaint.

[3] 24 Seven denies the allegations in Footnote 3 of the Second Amended Complaint.

49. 24 Seven denies the allegations contained in paragraph 49 of the Second Amended Complaint.

50. 24 Seven denies the allegations contained in paragraph 50 of the Second Amended Complaint.

51. 24 Seven deny the allegations contained in paragraph 51 of the Second Amended Complaint.

52. 24 Seven denies the allegations contained in paragraph 52 of the Second Amended Complaint.

## SECOND CAUSE OF ACTION
**Violation of the NYCHRL for Unlawful Termination Because of Pregnancy**

53. 24 Seven repeats and realleges its responses to the foregoing paragraphs as if fully set forth herein.

54. The allegations in paragraph 54 of the Second Amended Complaint are conclusions of law, not allegations of fact, and therefore no response is required.

55. 24 Seven denies the allegations contained in paragraph 55 of the Second Amended Complaint.

56. 24 Seven denies the allegations contained in paragraph 56 of the Second Amended Complaint.

57. 24 Seven denies the allegations contained in paragraph 57 of the Second Amended Complaint.

### Request for Relief

**WHEREFORE**, 24 Seven demands dismissal of the Second Amended Complaint with prejudice, costs, attorneys' fees and such other relief as the Court deems just and reasonable.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Second Amended Complaint, in whole or in part, fails to state a cause of action for which relief can be granted in part or in whole.

### SECOND AFFIRMATIVE DEFENSE

The Second Amended Complaint, in whole or in part, is barred by the applicable statutes of limitations.

### THIRD AFFIRMATIVE DEFENSE

Burgos's claims are barred, in whole or in part, by the Doctrines of Laches, Waiver, Unclean Hands and/or Estoppel.

### FOURTH AFFIRMATIVE DEFENSE

Burgos's claims are barred, in whole or in part, by Burgos's failure to adequately mitigate her damages.

### FIFTH AFFIRMATIVE DEFENSE

24 Seven's decisions and/or actions regarding Burgos were at all times legitimate and were done for non-discriminatory reasons and not for any unlawful reason and were unrelated to any exercise of rights by Burgos arising under federal, state or local laws.

### SIXTH AFFIRMATIVE DEFENSE

Burgos's claims are barred, in whole or in part, by her violations of 24 Seven's policies.

### SEVENTH AFFIRMATIVE DEFENSE

At all times relevant to this action, 24 Seven maintained an effective anti-discrimination and harassment policy and exercised reasonable care to prevent discrimination and harassment and to promptly correct any discrimination or harassment that did occur. To the extent any

discrimination or harassment did occur, which 24 Seven denies, Burgos unreasonably failed to take advantage of the preventive and/or corrective opportunities provided by 24 Seven.

### EIGHTH AFFIRMATIVE DEFENSE

Burgos has suffered no damages or injuries, as alleged.

### NINTH AFFIRMATIVE DEFENSE

To the extent any of the alleged conduct towards and treatment of Burgos can be attributed to 24 Seven, such conduct and treatment was not based on any protected class or status.

### TENTH AFFIRMATIVE DEFENSE

Burgos's cause of action is barred, in whole or in part, by her own actions.

### ELEVENTH AFFIRMATIVE DEFENSE

Some or all of the claims in the Second Amended Complaint may be barred, in whole or in part, by the doctrine of avoidable consequences.

### TWELFTH AFFIRMATIVE DEFENSE

Some or all of Burgos's claims for damages are barred by the doctrine of after-acquired evidence.

### THIRTEENTH AFFIRMATIVE DEFENSE

Burgos's claims are barred, in whole or in part, because the Second Amended Complaint fails to state facts entitling her to exemplary damages and/or civil penalties.

### FOURTEENTH AFFIRMATIVE DEFENSE

Burgos's claims are barred in whole or in part because the alleged wrongful acts of 24 Seven's employee(s) were outside the course and scope of employment of such employee(s),

were not in furtherance of 24 Seven's business, and were contrary to 24 Seven's good-faith efforts to comply with all applicable laws.

## FIFTEENTH AFFIRMATIVE DEFENSE

Burgos has waived her right to assert one or more of the claims raised against 24 Seven within the Second Amended Complaint.

## SIXTEENTH AFFIRMATIVE DEFENSE

Burgos did not have an employment contract and was at all times an employee at-will whose employment could be terminated and whose terms and conditions of employment could be altered at any time, for any reason with or without prior notice.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Burgos has failed to satisfy all procedural and/or administrative requirements for proper maintenance of this action.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Burgos's claims are barred in whole or in part by the exclusivity of Workers' Compensation.

## NINETEENTH AFFIRMATIVE DEFENSE

In the event 24 Seven is found liable based on the conduct of one or more of its employees or agents, its damages should be mitigated as it has established and complied with policies, programs and procedures for the prevention and detection of unlawful discriminatory practices by employees or agents, including but not limited to, a meaningful and responsive procedure for investigating complaints of discriminatory practices by employees or agents and for taking appropriate action against those persons who are found to have engaged in such practices.

## TWENTIETH AFFIRMATIVE DEFENSE

In the event 24 Seven is found liable based on the conduct of one or more of its employees or agents, its damages should be mitigated as it has established and complied with policies, programs and procedures for the prevention and detection of unlawful discriminatory practices by employees or agents, including but not limited to, a firm policy against such practices which is effectively communicated to employees and agents.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

In the event 24 Seven is found liable based on the conduct of one or more of its employees or agents, its damages should be mitigated as it has established and complied with policies, programs and procedures for the prevention and detection of unlawful discriminatory practices by employees or agents, including but not limited to, a program to educate employees and agents about unlawful discriminatory practices under local, state and federal law.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

In the event 24 Seven is found liable based on the conduct of one or more of its employees or agents, its damages should be mitigated as it has established and complied with policies, programs and procedures for the prevention and detection of unlawful discriminatory practices by employees or agents, including but not limited to, procedures for the supervision of employees and agents specifically directed at the prevention and detection of such practices.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

24 Seven reserves the right to assert any other affirmative defenses, by way of amended answer, that may be identified through further investigation, discovery or otherwise.

## COUNTERCLAIMS

As and for its Counterclaims against Plaintiff/Counterclaim Defendant Jennifer Burgos ("Burgos"), Defendant/Counterclaim Plaintiff 24 Seven, Inc. ("24 Seven"), by and through its attorneys, Goldberg Segalla LLP, alleges as follows:

1. 24 Seven is a domestic corporation with a principal place of business located at 120 Wooster Street, New York, New York 10012.

2. Burgos is an individual who, upon information and belief, resides in New York County, New York.

3. This Court has jurisdiction over 24 Seven's Counterclaims pursuant to 28 U.S.C. § 1367 because the Counterclaims are so related and intertwined with Burgos's claims in this action that they form a part of the same case and controversy.

4. Venue is proper pursuant to 28 U.S.C. 1391(b)(1) because, upon information and belief, Burgos resides in New York County, New York.

### AS AND FOR A FIRST COUNTERCLAIM
(Conversion)

5. Burgos's employment with 24 Seven was terminated on October 20, 2014 for legitimate, non-discriminatory reasons.

6. Prior to Burgos's termination and per her request, 24 Seven had been direct depositing Burgos's paychecks into her bank account.

7. Following Burgos's termination of employment, Burgos asked Elite Shapir, 24 Seven's Director of Human Resources ("Ms. Shapir"), to cancel Burgos's direct deposit and to send Burgos her final paycheck representing the remaining compensation she was owed for work performed via a "live check."

8. 24 Seven thereafter sent Burgos a live final paycheck dated October 24, 2014.

13

9. After 24 Seven cancelled Burgos's direct deposit and sent Burgos her final paycheck via a "live check," Burgos notified 24 Seven's payroll department that she wanted to receive her final paycheck via direct deposit. Burgos intentionally concealed this request from Ms. Shapir.

10. Unaware that 24 Seven had mailed Burgos a "live" final paycheck, 24 Seven's payroll department reinstituted Burgos's direct deposit and deposited Burgos's final paycheck into her bank account.

11. Burgos thereafter cashed the "live" final paycheck she received from 24 Seven.

12. As a result of Burgos's intentional conduct, Burgos received two final paychecks resulting in a gross overpayment to her of $626.96. Burgos has intentionally, and without 24 Seven's authority, kept this money and failed to return it to 24 Seven.

13. As a result of Burgos's conversion, 24 Seven has been damaged, and continues to be damaged, in the amount of at least $626.96.

**WHEREFORE**, 24 Seven requests this Court enter judgment in favor of 24 Seven and against Burgos:

(a) For compensatory damages;

(b) For attorneys' fees and costs of suit; and

(c) For such other and further legal and equitable relief as the Court deems just and proper.

### AS AND FOR A SECOND COUNTERCLAIM
**(Breach of Contract)**

14. 24 Seven repeats and realleges the allegations contained in paragraphs 1 through 13 of 24 Seven's Counterclaims.

15. On October 20, 2014, 24 Seven provided Burgos with a Termination Agreement, which 24 Seven's Chief Operating Officer signed on 24 Seven's behalf.

16. On October 21, 2014, Burgos returned to 24 Seven via fax the Termination Agreement, which she had signed and dated October 21, 2014.

17. 24 Seven paid Burgos $1,483.60 in severance pay in consideration for signing the Termination Agreement, in accordance with the terms of the Termination Agreement. Burgos was not otherwise entitled to receive this severance pay except for in consideration for signing the Termination Agreement.

18. 24 Seven complied with its duties and obligations under the Termination Agreement.

19. Paragraph 5(b) of the Termination Agreement states as follows: "This Agreement includes a release of claims of discrimination and retaliation on the basis of workers' compensation status, but does not include claims for workers' compensation benefits. Excluded from this Agreement are any claims which by law cannot be waived in a private agreement between employer and employee including, but not limited to, the right to file a charge with or participate in an investigation conducted by the Equal Employment Opportunity Commission ("EEOC") or any state or local fair employment practices agency. [Burgos] waives, however, any right to any monetary recovery or other relief should the EEOC or any other agency pursue a claim on [Burgos's] behalf. Finally, the release included in this Agreement does not constitute a release of any rights to indemnification [Burgos] has under any agreement between [Burgos] and [24 Seven] on the date hereof, any [24 Seven] insurance policy relating to such matters under which [Burgos] is covered, [24 Seven's] charter documents and/or applicable law."

20. Paragraph 5(c) of the Termination Agreement states as follows: "[Burgos] does hereby declare that he / she does understand, covenant, and agree that he / she will not make any claims or demands, or file any legal proceedings against [24 Seven] or join [24 Seven] as a party to any claim, demand, or legal proceedings nor shall [Burgos] proceed against any other party, person, firm, or corporation on the claims described above except as is necessary in order to enforce the terms and conditions of this Agreement."

21. Paragraph 5(d) of the Termination Agreement states as follows: "The filing of any claim, demand, or any and all other legal proceedings by the employee against [24 Seven] (other than as permitted herein or by law), shall be deemed to be a material breach of the terms of this agreement. Such breach shall, immediately, termination [24 Seven's] duty to pay any further sums to [Burgos] and shall also bind [Burgos] to repay any and all sums paid to him/her pursuant to the terms of this Agreement. Additionally, [Burgos] shall indemnify and hold harmless [24 Seven] against any all judgments, costs, expenses, or attorney fees whatsoever arising on account of the filing of any such claim, demand, or other legal proceedings by [Burgos]."

22. According to Paragraph 6(d) of the Termination Agreement, Burgos had up to seven (7) days from the date she signed the Termination Agreement to revoke her acceptance of same. Accordingly, Burgos had until October 28, 2014 to revoke her acceptance of the Termination Agreement.

23. Burgos did not revoke her acceptance of the Termination Agreement by October 28, 2014.

24. On October 31, 2014, Burgos cashed her severance pay check in the gross amount of $1,483.60.

**WHEREFORE**, 24 Seven demands judgment in its favor and against Burgos:

(a) For $1,483.60, representing the gross amount of severance pay Burgos received in consideration for executing the Termination Agreement, in accordance with the terms of the Termination Agreement;

(b) For any and all judgments, costs, expenses, or attorneys' fees incurred by 24 Seven in connection with Burgos's suit and 24 Seven's counterclaim for breach of contract, in accordance with the terms of the Termination Agreement;

(c) For such other and further legal and equitable relief as the Court deems just and proper.

        **GOLDBERG SEGALLA LLP**
        Attorneys for Defendant 24 Seven, Inc.

By:   */s/Michael S. Katzen*
       Michael S. Katzen, Esq.
       Caroline J. Berdzik, Esq.

Dated: June 15, 2015